UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT ASHLAND

| | |
|---|---|
| **REBECCA MILLER** | ) |
| | ) |
| **PLAINTIFF** | ) |
| | ) CIVIL ACTION NO. _____ |
| v. | ) |
| | ) |
| **MARATHON PETROLEUM** | ) |
| **LOGISTICS SERVICES LLC** | ) |
| | ) |
| **DEFENDANT** | ) |

## COMPLAINT

### I. PARTIES

1. The Plaintiff, Rebecca Miller (hereinafter "Miller" or "Plaintiff"), is an Ashland, Boyd County, Kentucky resident.

2. The Defendant, Marathon Petroleum Logistics Services LLC (hereinafter "Marathon" or "Defendant"), is a limited liability company operating and conducting business in Catlettsburg, Boyd County, Kentucky.

### II. JURISDICTION AND VENUE

3. This is an action for violations of the Americans with Disabilities Act ("ADA") pursuant to 42 USC §12101 et seq. and Kentucky Revised Statutes ("KRS"), Chapter 337.

4. This Court has original jurisdiction pursuant to the provisions of 29 USC §2601 et seq. and 42 USC §12101 et seq.

5. Venue is proper in this district because the actions giving rise to this Complaint occurred in this judicial district. Further, Defendant Marathon operates and conducts business within this judicial district.

1

## III. FACTUAL BACKGROUND

6. Miller is a former employee of Marathon, specifically its location in Catlettsburg, Kentucky.

7. Miller was employed by Marathon in the position of Rail Attendant.

8. Miller began her employment with Marathon as a temporary employee on November 20, 2000.

9. On December 15, 2003, Marathon officially hired Miller as an employee of the company.

10. In total, Miller worked for and was employed by Marathon for almost (20) years.

11. Marathon is an "employer" within the meaning of the ADA, at all times relevant to this Complaint.

12. During her almost two (2) decades of employment at Marathon, Miller was an extremely dedicated, loyal, productive, and successful employee. Specifically, Miller never had any issues, write-ups, or written warnings regarding attendance, performance, or discipline.

13. Miller's 2019 Annual Review, which was issued by Marathon's Rail Fleet Manager and Miller's direct supervisor, Michael Murray (hereinafter "Murray"), was categorized as "Extraordinary Results" and "Role Model" in several different areas, a designation only given to an extremely small portion of Marathon employees. [A copy of Miller's 2019 Annual Review is attached as Exhibit "1"].

14. Throughout her employment at Marathon, Miller's job duties consisted of strictly office work, sitting at her desk. Miller was never required to perform job duties in the field.

15. In February 2005, while employed at Marathon, Miller was hospitalized in the emergency room due to an extremely severe and debilitating headache.

16. Following her hospitalization, Miller was diagnosed with migraines and given a prescription to treat the same.

17. Following her diagnosis, Miller informed her direct supervisor, Murray, of her migraine health condition and prescription to treat the same.

18. From February 2005 through 2014, Miller was hospitalized on three (3) separate occasions due to incapacitating migraines. Additionally, Miller had numerous medical appointments with her primary care physician during this same time frame regarding treatment for her migraine diagnosis.

19. Miller was prescribed hydrocodone to treat her migraine headaches. When Miller would occasionally suffer from a migraine headache, she would take the prescribed medication and continue on with her daily life.

20. In approximately 2014, Miller's excruciating migraines stopped.

21. During the last week of December 2019, Miller began experiencing debilitating migraines and cluster headaches again. The incapacitating migraines continued to occur approximately five (5) to six (6) times between late December 2019 and late February 2020.

22. Due to the fact that Miller had a lawfully prescribed medication to treat her migraines, she would consume the medication when she had a migraine during this specific time period.

23. Miller informed Murray and other Marathon Rail Attendants regarding her reoccurring migraines during this time period.

24. Miller never took the migraine medication while on-the-job or immediately prior to coming to work.

25. Due to the extreme pain and discomfort that her migraines were causing her, Miller, who rarely ever missed work due to sickness, used two (2) sick days on February 3, 2020 and February 4, 2020 because of her incapacitating condition.

26. On March 5, 2020, Marathon ordered Miller to subject herself to a drug screen.

27. On March 14, 2020, Marathon's Medical Review Officer ("MRO"), Dr. James Dowling, called Miller and informed her that her drug screen had tested positive for hydrocodone and asked Miller if she could provide a prescription for the positive substance.

28. Miller informed Dr. Dowling that she had been prescribed hydrocodone to treat her migraine headaches, and that she could provide him with a copy of the prescription.

29. On March 17, 2020, Miller was scheduled for a doctor's appointment with her primary care physician, Dr. Kimberly Baldock, where Miller was to be treated for and discuss her recent and ongoing migraines. However, due to the COVID-19 epidemic and outbreak, the appointment was rescheduled for a virtual telehealth appointment on March 25, 2020.

30. On March 20, 2020, Miller received the prescription history from CVS, which specifically verified that Miller had been prescribed hydrocodone in the past to treat migraines. [A copy of Miller's CVS Prescription History is attached as Exhibit "2"].

31. Miller immediately forwarded the CVS prescription history verifying her authorized and lawful prescription of hydrocodone to Dr. Dowling.

32. On March 25, 2020, Miller was treated by Dr. Baldock for her migraines via a virtual telehealth appointment.

33. Following her appointment, Miller sent a text message to both Marathon's Human Resources Manager, Brittany Craun (hereinafter "Craun") and Dr. Dowling, separating informing

both of them of her doctor's appointment and ongoing treatment for her debilitating migraine headaches. Neither Craun nor Dr. Dowling responded to her text message.

34. On March 27, 2020, Miller sent an email to Murray with the subject, "Wrongful Termination." Specifically, Miller stated in the body of her email that "I believe I'm going to be terminated for my medical condition, specifically migraines. I tested positive with a medication that was prescribed for my condition. I realize that it was an old medication but I had a few left and was trying to keep from going to the emergency room. Especially with the coronavirus pandemic. I don't believe the company was very accommodating in order to treat my disability." [A copy of Miller's 3/27/2020 email is attached as Exhibit "3"].

35. Later the same day, March 27, 2020, Miller was called into a meeting with Murray, where she was informed that Marathon was terminating her employment, effective immediately.

36. Marathon's Drug and Alcohol policy defines the term "Authorized Substances" as "[s]ubstances having a physiological, psychological or biochemical effect which are lawfully prescribed to an employee … and which the employee possesses and uses in the appropriate manner, in the dosages and for the purposes for which the substances were prescribed…." [A copy of Marathon's Drug and Alcohol Policy is attached as Exhibit "4"].

37. Miller's prescription for use of hydrocodone constitutes an "Authorized Substance" according to Marathon's definition of the same. Miller had been "lawfully prescribed" the substance by her physician and used the substance "in the appropriate manner" "and for the purposes for which the substances were prescribed."

38. Due to Miller's performance, and the overall performance of the company in 2019, Miller was entitled to receive a 2019 Annual Cash Bonus in the amount of $9,000.00. [A copy of the Annual Cash Bonus Award is attached as Exhibit "5"].

39. Following her unlawful termination, Marathon has failed to pay Miller her earned bonus, in violation of Kentucky's wage and hour laws.

40. Miller's debilitating migraine headaches constitute a disability under the Americans with Disabilities Act ("ADA") pursuant to 42 USC §12102 et. seq.

41. Marathon failed to accommodate Miller' disability and discharged Miller.

42. Marathon was aware of Miller' disability prior to discharging her.

43. Marathon perceived and regarded Miller as having a disability prior to discharging her.

44. Marathon retaliated against Miller by terminating her within hours after Miller engaging in a legally protected activity of submitting a formal complaint to Marathon's management regarding disability discrimination and failure to accommodate.

### III. CLAIMS AND CAUSES OF ACTION

#### COUNT I. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ DISCRIMINATION ON THE BASIS OF AN EMPLOYEE'S DISABILITY

45. Miller re-alleges all allegations contained in paragraphs 1 through 44 above as if fully set forth herein.

46. Marathon terminated Miller's employment on the basis of a disability and/or a "perceived" disability and/or a "regarded as" disability in violation of 42 USC §12101 et. seq.

47. As a result of Marathon's violations of the ADA, Miller has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

#### COUNT II. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ EMPLOYER'S FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

48. Miller re-alleges all allegations contained in paragraphs 1 through 47 above as if fully set forth herein.

49. Miller was a qualified individual with a disability under the ADA, 42 USC §12101 et. seq.

50. Marathon failed to reasonably accommodate Miller's disability in violation of 42 USC §12101 et. seq.

51. As a result of Marathon's violations of the ADA, Miller has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

### COUNT III. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ RETALIATION FOR MAKING COMPLAINTS REGARDING DISABILITY DISCRIMINATION & FAILURE TO ACCOMMODATE

52. Miller re-alleges all allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

53. Marathon's actions, as set forth above, constitute retaliation and unlawful discharge in violation of ADA.

54. As a result of Marathon's violation of ADA, Miller has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### COUNT IV. KRS 337 WAGE AND HOUR VIOLATION

55. Miller re-alleges all allegations contained in paragraphs 1 through 54 above as if fully set forth herein.

56. Marathon has failed to timely and fully pay Miller her earned 2019 Annual Cash Bonus.

57. As a result of the foregoing, Miller is entitled to monetary damages against Marathon as set forth by KRS 337.385, including payment of the wages due to her, liquidated damages, attorney's fees and litigation expenses.

### COUNT V. MANDATORY RECOVERY OF ATTORNEY'S FEES AND COSTS

58. Miller re-alleges all allegations contained in paragraphs 1 through 57 above as if fully set forth herein.

59. Miller is mandatorily entitled to recover her attorney's fees and costs pursuant to the provisions of the ADA and KRS 337.

## IV. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Rebecca Miller, respectfully prays that she be awarded the following relief and all other relief to which she may be entitled against the Defendant, Marathon Petroleum Logistics Services LLC.:

A. Trial by jury;

B. Judgment against Defendant on all claims asserted herein;

C. Compensatory and actual damages including but not limited to past and future lost wages and past and future lost benefits;

D. Compensatory damages including but not limited to emotional distress, mental anguish, humiliation and embarrassment;

E. All statutory remedies provided by the ADA and KRS 337;

F. Equitable relief in the form of reinstatement, promotion and/or front pay;

G. Punitive damages to punish and deter similar future unlawful conduct;

H. An award of statutory attorney fees, expert witness fees, costs and expenses;

I. Statutory interest on all monetary damage awards, verdicts, or judgments; and

J. All other and additional relief to which Miller may be entitled.

Respectfully submitted,

/s/ Bradley S. Zoppoth
Bradley S. Zoppoth
THE ZOPPOTH LAW FIRM
6510 Glenridge Park Place, Suite 1
Louisville, KY  40222
(502) 568-8884
bsz@zoplaw.com

T.J. Smith
600 West Main St., Suite 200
Louisville KY 40202
502-589-2560
makeempay.tj@gmail.com

*Counsel for the Plaintiff, Rebecca Miller*